**B. M. WILLIAMS, Plaintiff-Appellant,**

v.

**Ivan ALLEN, Jr., et al., Defendants-Appellees.**

**No. 29894.**

United States Court of Appeals,
Fifth Circuit.

March 18, 1971.

Beryl H. Weiner, Roy J. Leite, Jr., Atlanta, Ga., for plaintiff-appellant.

Thomas F. Choyce, Henry L. Bowden, John W. Stokes, Jr., U. S. Atty., Allen L. Chancey, Jr., Asst. U. S. Atty., Atlanta, Ga., for defendants-appellees.

Before RIVES, GOLDBERG and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

B. M. Williams filed suit against the Mayor, the Board of Aldermen, and the Police Committee of Atlanta, Georgia, alleging he was unconstitutionally discharged from his employment on the city's police force. The district court denied relief by entering an order granting summary judgment for the defendants. For the reasons set forth herein, we affirm in part and reverse and remand in part.

The Atlanta Police Department hired Williams as a policeman in June of 1958. At some time during 1962 an informant told Williams that the Atlanta Chief of Police and a captain in the Atlanta police force were receiving payoffs from persons involved in the lottery rackets. Williams turned this information and the informant over to officials of the Internal Revenue Service. After the matter came to the attention of police officials, Williams revealed to them all of the informant's revelations but he refused to divulge the name of the informant, claiming such disclosure would endanger the life of the informant. In September of 1965, the Atlanta Police

Committee enacted Rule 5[1] which had the effect of requiring disclosure by policemen of any information deemed necessary to the investigation of another member of the police department. Armed with this new rule, the police department again asked Williams for the name of the informant and he again refused to make the disclosure.

A multi-count charge was lodged against Williams accusing him of informing the Internal Revenue Service of the alleged acceptance of lottery payoffs by police officers; of refusing to reveal the name of the informant when ordered to do so by a superior officer; of insubordination and disrespect toward a superior officer; and of failure to voluntarily reveal the lottery payoff information to the department at the proper time. A hearing was held before the Police Committee and Williams was found guilty as charged. However, on appeal to the Georgia Court of Appeals, the verdict was reversed, Williams v. Mayor, &c. of Atlanta, 1968, 118 Ga.App. 271 163 S.E.2d 239, because, contrary to the department's own rules, the Chief of Police had remained in the executive session of the Police Committee during its deliberations.

In *Williams,* supra, the court also held that Williams could be compelled to reveal the name of the informant under penalty of discharge from his job as policeman. Pursuant to this ruling, Williams tendered the informant's name to the department, but the Police Committee, nevertheless, retried Williams and again found him guilty of the same charges as were brought in the first trial.

Williams filed an action for back pay and equitable relief in federal district court under 42 U.S.C. §§ 1981, 1983, 1985, and 28 U.S.C. § 1343, claiming he was illegally deprived of rights secured by the United States Constitution. Relief was demanded on the theory that the actual motive and cause of Williams' discharge from employment was his act of reporting to the Internal Revenue Service a supposed violation of federal law—an act which is constitutionally protected from interference. In Re Quarles, 1895, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080. In its order denying defendants' motion to dismiss for failure to state a claim upon which relief can be granted, Rule 12(b) (6), Federal Rules of Civil Procedure, 28 U.S.C., the district court correctly stated the applicable law and recognized the issue with which it was confronted:

"Since In Re Quarles, supra, it has been well established that it is both the duty and the right of every citizen to communicate to executive officers any information which he has of the commission of a federal offense. A party exercising that right in *Quarles* was protected from any threat to its free exercise by 18 U.S.C. § 241 (then § 5508 of the Revised Statutes of 1874–1878). This right to inform continues to be protectable and to afford federal question jurisdiction. See United States v. Guest, 1966, 383 U.S. 745, 771, 779, [86 S.Ct. 1170, 16 L.Ed.2d 239,] Harlan, J., concurring in part and dissenting in part, Brennan, J., concurring in part and dissenting in part. Swaaley v. United States, Ct.Cl., 1967, 376 F.2d 857 [,180 Ct.Cl. 1;] Edwards v. Habib, D.C.A., 1968, [130 U.S.App.D.C. 126,] 397 F.2d 687, 697–698. Even though neither the Constitution nor its amendments explicitly grant the right of an informer to communicate information about the possible violation of a federal offense to federal officials it

---

1. Rule 5 provides that, "Every officer or member of the Police Department in whatever capacity, shall furnish the Investigating Division with any and all information in their possession which the Investigating Division determines to be required in its investigation of any matter or thing involving the Police Department or any matter of said Department. Failure to furnish such information shall subject the offending person to such disciplinary action as may be determined after a full hearing of the facts before the Police Committee."

arises from the Constitution and the nature of the national government which has the right to insure its self protection. In this regard the informer's right is similar to the right to vote in federal elections, Ex Parte Yarbrough, 1884, 110 U.S. 651, [4 S. Ct. 152, 28 L.Ed. 274,] or in a primary election, United States v. Classic, 1941, 313 U.S. 299 [, 61 S.Ct. 1031, 85 L.Ed. 1368;] the right to petition the government for a redress of grievances, United States v. Cruikshank, 1876, 92 U.S. 542, [23 L.Ed. 588,] Swaaley v. United States, supra; and the right to protect against violence while in the lawful custody of a federal officer, Logan v. United States, 1892, 144 U.S. 263, [12 S.Ct. 617, 36 L.Ed. 429.] All of these rights are protected against interference from state action and private activities. Interference with these inherent constitutional rights is not only punishable under 18 U.S.C. §§ 241, 242, however.

"Interference with the right to inform the government would justify equitable relief, Edwards v. Habib, D. C.A., 1965, [125 U.S.App.D.C. 49,] 366 F.2d 628, 629, Edwards v. Habib, D. C.A., 1968, [130 U.S.App.D.C. 126,] 397 F.2d 687 (dictum); might provide a cause of action against the United States under the Federal Tort Claims Act in an appropriate case, Swanner v. United States, M.D.Ala., 1967, 275 F.Supp. 1007, reversed on other grounds, [5 Cir.,] 406 F.2d 716; and should afford a cause of action under 42 U.S.C. § 1983, which is merely the civil side of criminal sections 18 U.S.C. §§ 241, 242. Both § 1983 and § 241 were passed during the Reconstruction period and they have parallel purposes. Byrd v. Sexton, 8 Cir., 1960, 277 F.2d 418, 427, 429. If a violation of the 'informer's right' may be punishable under § 241, *a fortiori* it should be actionable under § 1983. Brewer v. Hoxie School District No. 46, 8 Cir., 1956, 238 F.2d

91. It may develop at trial that plaintiff was not discharged for exercising his constitutional right to inform the Government of a possible criminal violation of the federal laws * * *. *Plaintiff might recover if he can show that he was discharged for exercise of his 'informer's right' * * *. However, we wish to make it clear that if the plaintiff was discharged for failure to report the informer's information to superior officers, no relief could be granted."* (Emphasis supplied.)

We agree with the district court that the resolution of Williams' claim turns on the factual question of whether the police department discharged him for the constitutionally protected act of informing the Internal Revenue Service, or whether, in reality, he was dismissed for refusing to reveal the name of the informant and failing to make a timely disclosure of certain information. However, the court resolved this issue and granted defendants' motion for summary judgment [2] by holding that the mere existence of other valid reasons for dismissal from employment established the police department's actual motive for firing Williams:

"Thus, even assuming the validity of plaintiff's allegation concerning the informer's privilege, *the presence of other valid counts would bar a reversal of the Police Committee's guilty ruling* (emphasis added) * * *. We only say here that if the other counts against him can be supported in the record, then in this civil action plaintiff can get no relief even assuming his informer's privilege was violated.

"Thus the record adequately supports at least some of the other charges. For this reason we grant defendants' motion for summary judgment as to the informer's privilege. * * *."

Without question, valid reasons existed for removing Williams from the police

---

2. Rule 56, F.R.C.P., 28 U.S.C.

force, i. e., his refusal to name the informant and his failure to immediately convey the lottery payoff information to his superior officers. However, the mere presence of these valid reasons does not prove that they were actually used by the police department in making its decision to dismiss an employee. On the contrary, Williams contends the "trial" before the Police Committee was prompted by the exercise of his informer's right and the other charges against him, although factually supportable, were superficial and would never have been brought but for his act of informing the Internal Revenue Service concerning the alleged lottery payoffs to the Chief of Police. The issue is thus not whether other valid reasons for removal existed, but whether the valid reasons were actually employed by the Police Committee to effect Williams' severance from the department. The order granting summary judgment deprived Williams of the opportunity to attempt to establish that the sole actual motive[3] behind his dismissal was an illegal one and that the other legitimate charges of misconduct actually played no part in his discharge from employment.

█ At this stage it becomes necessary to point out that Williams' contention regarding the actual motive for his removal is more than a mere allegation. See Rule 56(e), Federal Rules of Civil Procedure, 28 U.S.C. The record reveals that in both hearings before the Police Committee, Williams was specifically charged with the offense of giving "information to the Internal Revenue Service dealing with the lottery racket and alleged payoff(s) by members of the lottery racket to superior officers in the Atlanta Police Department". The information given to the Internal Revenue

Service concerned the Chief of Police who was later observed pounding on the table at the first Police Committee hearing and demanding Williams' release No charges were preferred against Williams for his initial refusal to reveal the informant's identity and when he tendered the name of the informant subsequent to the state court's decision in Williams v. Mayor &c. of Atlanta, supra, the tender was refused and Williams was tried again. In view of the conflicting inferences created by these undisputed facts, we are unable to say that there is no genuine issue regarding the ultimate factual question of why Williams was removed from the police force. Rule 56, F.R.C.P., supra; Hart v. Johnston, 6 Cir., 1968, 389 F.2d 239, 242; see also, State of Pa. v. Curtiss Nat. Bank of Miami Springs, Fla., 5 Cir., 1970, 427 F.2d 395, 400–401.

The district court's order granting summary judgment for defendants on the issue of the informer's privilege is therefore reversed and the case is remanded for a determination of the actual motive behind the termination of employment. We emphasize that our ruling does no more than allow the parties an opportunity to establish before the trier of fact the true reason for firing Williams.

As to the other contentions advanced by Williams, we find that discussion is not warranted. Brody etc. v. Aetna Cas. & Surety Co., 5 Cir., 1971, 438 F.2d 1148, 1151 [1971]. We have carefully considered each of the claims and hold them to be without merit. Those portions of the district court's judgment which do not deal with the question of the informer's privilege are therefore affirmed.

Affirmed in part; reversed and remanded in part.

---

3. We note in passing the difficulty in upholding an order granting summary judgment where the ultimate issues involve questions of motive and intent. See Poller v. Columbia Broadcasting System. 1961, 368 U.S. 464, 473, 82 S.Ct. 486,

7 L.Ed.2d 458; White Motor Company v. United States, 1963, 372 U.S. 253, 259, 83 S.Ct. 696, 9 L.Ed.2d 738; Alabama Great So. R. Co. v. Louisville & Nashville R. Co., 5 Cir., 1955, 224 F.2d 1, 5.