United States Court of Appeals
Fifth Circuit

**F I L E D**

April 26, 2006

Charles R. Fulbruge III
Clerk

In the

United States Court of Appeals
for the Fifth Circuit

———————

Nº 05-20505
Summary Calendar

———————

WILLIAM FRANKLIN MCCOY; XUEYUAN WU;
BEI GOU; YANQIN CHEN; JUN LIU; ET AL.,

Plaintiffs-Appellants,

VERSUS

HOMESTEAD STUDIO SUITES HOTELS;
HVI, INC.,
DOING BUSINESS AS HOMESTEAD STUDIO SUITES HOTELS;
BRE/TX PROPERTIES L.P.,
DOING BUSINESS AS HOMESTEAD STUDIO SUITES HOTELS;
BRE/HOMESTEAD VILLAGE, L.L.C.;
BRE/TX PROPERTIES, L.L.C.,
DOING BUSINESS AS HOMESTEAD STUDIO SUITES HOTELS,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Southern District of Texas
Nº 4:03-CV-3648

———————————————

Before SMITH, GARZA and PRADO,
   Circuit Judges.

PER CURIAM:*

Plaintiffs appeal the dismissal of their claims for unlawful discrimination under 42 U.S.C. §§ 1981, 1982, 2000a, and 1985(3), and their pendent claims under the Texas Deceptive Trade Practices Act ("DTPA") and for breach of contract. We find no error in the district court's opinion and affirm.

Plaintiffs are practitioners of Falun Gong, a spiritual belief system whose members are persecuted by the People's Republic of China ("PRC"). When it was announced that Jiang Zemin, the former president of the PRC, intended to visit Houston and stay in the Intercontinental Hotel, plaintiffs made reservations at the nearby Homestead Studio Suites hotel ("Homestead") to protest his presence. Homestead later made arrangements with a representative of the PRC to rent a substantial number of rooms to PRC members at a premium rate for the duration of Jiang's visit. Because this contract with the PRC resulted in overbooking, Homestead implemented its "walk policy" with respect to persons scheduled for short-term stays, including plaintiffs.

Under the "walk policy," Homestead provides displaced patrons free transportation to, and a complimentary one-night stay at, a neighboring Homestead hotel. If no Homestead in the area has a vacancy, Homestead will pay for the first night's stay at a compara-

ble hotel. Plaintiffs rejected the alternate accommodations, claiming that Homestead implemented its "walk policy" because they were members of Falun Gong. Plaintiffs and Homestead filed cross-motions for summary judgment.

We review a grant of summary judgment *de novo*, applying the same legal standards as the court below. *Vulcan Materials Co. v. City of Tehuacana*, 369 F.3d 882, 886 (5th Cir. 2004). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). We must view the evidence in the light most favorable to the non-moving party. *See Vulcan*, 369 F.3d at 886.

Plaintiffs allege that Homestead violated their right to make and enforce contracts under § 1981.[1] To prove a § 1981 claim, a plaintiff must show that (1) he is a member of a racial minority, (2) the defendant had an intent to discriminate on the basis of race, and (3) the discrimination concerns one of the activities listed in the statute. *See Green v. State Bar*, 27 F.3d 1083, 1086 (5th Cir. 1994). Assuming *arguendo* that plaintiffs state a claim under parts (1) and (3) of this test, as persons of Chinese national origin who sought specific enforcement of their contracts with Home-

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981.

2

stead, they cannot demonstrate that Homestead had any intent to discriminate. First, Homestead filled the rooms previously reserved by plaintiffs with members of the PRC, who are also of Chinese national origin. Second, there is no evidence that Homestead did not also exercise the "walk policy" with respect to non-Chinese patrons with short-term reservations. Third, there is no evidence that Homestead, once it decided to implement its "walk policy," offered different alternate accommodations to plaintiffs than to non-Chinese guests. For these reasons, plaintiffs fail to demonstrate a genuine issue of material fact on their § 1981 claim.[2]

Plaintiffs allege violations of § 1982,[3] which guarantees the right to be free from discrimination based on race in the leasing of property. "A cause of action based upon section 1982 likewise requires an intentional act of racial discrimination by a defendant." *Vaughner v. Pulito*, 804 F.2d 873, 877 (5th Cir. 1986). Therefore, plaintiffs' § 1982 claim suffers from the same fatal flaw as their § 1981 claim: an inability to provide evidence of racial animus. The record merely reflects that Homestead took advantage of a legitimate business opportunity by implementing its "walk policy" and renting out its rooms at a premium rate.

Plaintiffs argue that Homestead violated their right to be free from racial or religious discrimination in places of public accommodation under § 2000a.[4] We have already explained why plaintiffs fail to make a *prima facie* claim of racial discrimination, and the same logic applies to their claim for religious discrimination.

Assuming *arguendo* that Falun Gong qualifies as a religion, plaintiffs have offered no evidence that Homestead did not also "walk" non-practitioners of Falun Gong, nor that plaintiffs received unequal alternate accommodations, nor that Homestead had any knowledge whether the particular patrons being "walked" practiced Falun Gong. Therefore, plaintiffs cannot demonstrate that Homestead engaged in "discrimination . . . on the ground of . . . religion." *Id.* at § 2000a.

Plaintiffs maintain that Homestead conspired with the Chinese government to deny them the equal protection of the laws under § 1985(c).[5] To state a § 1985(c) claim, a

---

[2] To the extent that plaintiffs allege that we should not consider them as part of the same protected class as members of the PRC, because they are practitioners of Falun Gong plaintiffs fail to state a claim under § 1981 because the statute does not protect against religious discrimination. *See Runyon v. McCrary*, 427 U.S. 160, 167 (1976).

[3] "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982.

[4] "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a).

[5] "If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the
(continued...)

3

plaintiff must demonstrate (1) a conspiracy between two or more people, (2) for the purpose of depriving a person or class of the equal protection of the laws, and (3) an act that furthers the conspiracy, (4) whereby a person is injured in his person or property or denied any right or privilege of a citizen of the United States. *See Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987). "Essential to the [§ 1985(c)] claim . . . is that the conspiracy be motivated by racial animus." *Word of Faith World Outreach Ctr. Church v. Sawyer*, 90 F.3d 118, 124 (5th Cir. 1996).

We have declined to extend § 1985(c) claims into the realm of religious discrimination. *See id.* Therefore, because plaintiffs cannot demonstrate that Homestead acted out of racial animus, *a fortiori* they cannot demonstrate that Homestead conspired with the Chinese government to act out of racial animus.

Plaintiffs bring state law actions under the DTPA and for breach of contract. The DTPA applies to all transactions for goods and services and prohibits "any unconscionable action or course of action" that causes damages. *See* TEX. BUS. & COM. CODE § 17.50(a)(3). To prevail, plaintiffs must show that Homestead "took advantage of [plaintiffs'] lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *See Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001) (internal quotations omitted).

Because the evidence suggests that Homestead's "walk policy" is a standard practice in the hotel industry, and because Homestead of-

fered plaintiffs reasonable alternative lodgings, plaintiffs cannot prove the high degree of unfairness necessary to sustain an action under the DTPA. Likewise, plaintiffs cannot prevail on their breach of contract claim because they have presented no evidence that they suffered damage as a result of the transfer of their reservation from one hotel to another.

Plaintiffs merely assert, without citing record evidence, that they suffered inconvenience. Even were there such evidence, supporting their claim that they suffered inconvenience as a result of Homestead's actions, they point to no evidence that damages from disappointment or distress from being relocated further from Zemin and the PRC delegation were within Homestead's contemplation when the contract was formed.[6]

For the above reasons, we adopt the thorough reasoning of the district court and AFFIRM the denial of plaintiffs' motion for summary judgment and the grant of defendants' cross-motion. To the extent that defendants' counterclaim under the DTPA is before us on appeal, we AFFIRM the dismissal of the claim with prejudice.

---

[5](...continued) conspirators." 42 U.S.C. § 1985(3).

---

[6] *See Mead v. Johnson*, 615 S.W.2d 685, 687 (Tex. 1981) (stating that damages for breach of contract must either arise naturally from the breach or have been in the contemplation of both parties when the contract was formed) (citing *Hadley v. Baxendale*, 9 Ex. 341, 354, 156 Eng. Rep. 145, 151 (1854)).